McBRIDE et al. v. UNITED IRR. CO.
(No. 6136.)

(Court of Civil Appeals of Texas. San Antonio. May 7, 1919.)

1. WATERS AND WATER COURSES ⬦254—IRRIGATION—RIGHT TO WATER SUPPLY—EVIDENCE.

In an action to compel a public water supply company to furnish water for irrigation purposes at a stated price, evidence held to show that plaintiffs had acquired a right to receive water at a reasonable rate from the plant prior to a receiver's sale wherein plaintiffs' easements were alleged to have been sold.

2. WATERS AND WATER COURSES ⬦254—IRRIGATION—RIGHTS TO SUPPLY—EVIDENCE—SALE OF IRRIGATION PLANT.

In a proceeding to compel an irrigation plant to supply water at reasonable rates for irrigation purposes, evidence held not to support a finding that the president and owner of the irrigation plant was an innocent purchaser without notice of plaintiffs' rights.

3. JUDGMENT ⬦950(1) — PLEADING AND PROOF—DECREES IN PRIOR ADJUDICATIONS.

In a suit to compel an irrigation plant to supply water for irrigation purposes at a reasonable rate, it was not error to admit in evidence decrees in a previous suit whereby the irrigation plant was conveyed to purchasers at a judicial sale free from easements, notwithstanding an exception to a plea of res judicata was sustained.

4. JUDGMENT ⬦950(1)—EVIDENCE—ADMISSIBILITY—MATTERS PROVABLE UNDER GENERAL DENIAL.

In a suit to compel an irrigation plant to furnish water for irrigation at reasonable rates, orders in a previous suit, wherein the plant was sold at judicial sale free from all easements, were admissible under the general denial.

5. RECEIVERS ⬦142—SALE OF PROPERTY—IRRIGATION PLANTS—RIGHTS OF PURCHASER—EXISTING RIGHTS TO WATER.

Where parties to whom an irrigation plant had furnished water for irrigation purposes were made parties to receivership suit wherein the plant was sold at judicial sale, free from all easements, a purchaser at such sale held to have acquired title to the plant free from plaintiffs' easements.

Appeal from District Court, Hidalgo County; V. W. Taylor, Judge.

Action by Thomas McBride and others against the United Irrigation Company for mandamus to compel defendant to furnish water for irrigation purposes at a reasonable rate, and for an injunction. Judgment for defendant, and plaintiffs appeal. Affirmed.

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

George P. Brown, of Edinburg, and Don. A. Bliss, of San Antonio, for appellants.

Andrews, Streetman, Logue & Mobley, of Houston, Glasscock & McDaniel, of McAllen, and B. F. Louis, of Houston, for appellee.

COBBS, J. This suit was instituted by Thomas Burton, Penelope H. Peterson, S. A. McHenry, G. S. Dobbins, W. W. Birket, C. J. Netting, appellants, complaining of the United Irrigation Company, a corporation incorporated under the laws of Texas, doing business in the town of Mission in Hidalgo county, Tex., of which John Shary is president.

The petition is brought upon the theory that, all the complaints being in common against the same defendant, the object of which is to secure a reasonable rate on water, they may be joined in same suit.

It is claimed that each complainant and defendant have a common source of title which guarantees to each respective tract of land the right to be furnished with water from the said irrigation plant of the United Irrigation Company for the purpose of irrigating their respective tracts, which water rights are claimed to have been owned and enjoyed for many years. They claim to have been furnished water from said irrigating plant to irrigate their lands at the rate of $1 per acre for each watering, up to the time the property of the Mission Canal Company, also a public service irrigation corporation, incorporated under the laws of Texas, passed to the United Irrigation Company under the receivership proceedings of the Mission Canal Company, which company was placed in the hands of a receiver by virtue of orders and decrees of the district court of Harris county, Tex. A controversy was raised in said suit because the receiver demanded and exacted from complainants and others owning water rights a so-called flat rate of $4 per acre on each and every acre owned by complainants and others whether said lands had been cleared and placed in cultivation or not as a condition precedent to receiver furnishing water with which to irrigate. Litigation resulted between the complainants on the one side and the receiver on the other side in said receivership which complainant alleges is pending on appeal in the First Court of Civil Appeals.

It is alleged during the pendency of said litigation in the district court of Harris county, Tex., all the property of the said Mission Canal Company, including the said irrigation plant, was sold under a foreclosure decree rendered in said district court of Harris county. Said property was bought by one Bailey and Hoit, trustees for the Bankers' Trust Company, a corporation, and the Southern Trust Company, another corporation, and thereafter, by direction of said

corporations, the said property of the said Mission Canal Company, including the said irrigation plant, was conveyed to John H. Shary, the trustee for United Irrigation Company, to which company he conveyed all the property, and said company is now operating it as a public service corporation. That since said purchase said company refuses to furnish complainants with water unless complainants would purchase from it new water rights at high prices, to wit from $25 to $100 per acre and pay to it all arrears of so-called flat rate of $4 per acre for each and every year since the said receiver had sought to exact the same and to assign a contract binding them for all time in the future, to which 'complainants refused to agree.

It is alleged that said land is situated in the semiarid district of the state, and is not worth more than $5 per acre for other purposes.

It is averred that complainants have repeatedly offered to pay a reasonable rate in cash to defendants for water with which to irrigate their lands, which defendant refuses, and demands, further, that their suit in Court of Civil Appeals be dismissed before it will give water. The rate offered was $1.50.

Complainants aver that $1.50 per acre is a reasonable price to water said land; that defendant has an abundant amount of water not previously contracted for to others; that for the year of 1917 they have suffered the loss of the reasonable rental value of their said tracts for said year which is and was the sum of $20 per acre in loss of rental value, and could make a profit out of each and every acre of their said tracts, by farming same, or from $50 to $100 per acre. They pray the court to award them a peremptory writ of mandamus, compelling defendant to furnish water to irrigate their said tracts at the rate of $1.50 per acre for each watering as a reasonable rate, or at whatever rate the court may find and adjudge to be reasonable and to establish their own rights.

They also prayed for a temporary writ of injunction, which was granted, but subsequently dissolved by the court.

Defendant interposed a number of exceptions to the petition of plaintiffs, not necessary to mention, because all of defendant's exceptions to plaintiffs' petition were overruled by the court and no exception thereto reserved.

While the defendant pleaded, as a defense to appellants' claim of a prior water right, the decree of the district court of Harris county in the Fifty-Fifth judicial district court, in cause No. 56169, styled · Bankers' Trust Co. v. Mission Canal Company, S. A. McHenry et al., Interveners, by virtue of and under which all of said properties were sold and sale confirmed and acquiesced in by appellee, and by virtue of which plaintiffs' claim to water rights against said company terminated and became vested in said company under said decree, and the matters therein, as between appellants and appellee, became res adjudicata, appellants by a supplemental petition excepted to so much of said answer as set forth the proceedings and judgment rendered in a certain suit by a district court of Harris county, Tex., because said answer shows on its face that said judgment has been appealed from and is now pending on appeal, upon which plaintiff prayed the judgment of the court. The court did not sustain the exceptions at that time, but proceeded to and did hear the entire case on its merits, but finally, in its judgment said:

"And the court, having duly considered the pleas and exceptions heretofore taken under · advisement, sustains the exception of the plaintiff to all that part of defendants' answer which undertakes to set up a plea of res adjudicata as a defense, and overrules all other pleas and exceptions of all parties to the suit."

The plaintiffs duly and in open court properly excepted to the ruling of the court in respect to the whole decree, but the defendant did not make any exception or reserve any, and therefore none of his exceptions to plaintiffs' pleadings are before this court; and it is not necessary to mention or consider any defense set up by the defendant by way of exception or by defense.

It is undisputed that John J. Conway and James W. Hoit owned about 27,000 acres of land, called "La Lomita lands," bordering on the Rio Grande river in Hidalgo county, Tex. They purchased this land in 1907. It was subdivided in 40-acre tracts, lowest subdivision being 10 acres. After having made an appropriation of water of the Rio Grande river for purpose of irrigating entire body of land, they offered for sale and sold subdivisions to various purchasers as irrigated lands, including appellants. They constructed laterals from the main canals, and on to the subdivisions as they sold same, for the purpose of furnishing same with water. A map was made showing the location of each subdivision, the main canal, and all the laterls to each and every subdivision. This water was furnished from the irrigation canals to the lands of appellants up to the time of the appointment of the receiver of the property of the Mission Canal Company by the district court of Harris county for the Sixty-First judicial district court (Harris county).

The Mission Land Improvement Company was incorporated under the laws of Texas for irrigation purposes, among other purposes; for "irrigating its own lands and the lands contiguous to its own land and the lands contiguous to its irrigation canals, or lands,' in fact, incorporated with all the powers and privileges the law grants in such cases.

The Mission Land Improvement Company acquired the title to the lands of Conway and Hoit, and on March 17, 1910, Mission Land & Improvement Company conveyed to the Mission Canal Company, an incorporated company under the laws of Texas, an irrigation corporation, all the said irrigation system on said body of land.

The Mission Canal Company was placed in the hands of a receiver by an order of the district court of Harris county for the Sixty-First district, in a suit wherein the Bankers' Trust Company was plaintiff and the Mission Canal Company was defendant. In this case the district court of Harris county entered a decree, directing all the property of the Mission Canal Company, including the said irrigation system on said body of land, be sold for the purpose of paying off certain receiver's certificates created by the order of said court, which certificates were owned by the said Bankers' Trust Company and the Southern Trust Company, and intervener in said suit. Said order directed that the said property, including the said irrigation system, be sold free of the easements, etc.

At the sale of the Bankers' Trust Company and the Southern Trust Company, through their trustees, Bailey and Holland, on December 7, 1915, bought said property at said sale, including the said irrigation system. On the 14th day of December, 1915, the sale was confirmed and receiver directed to make conveyance to the purchasers.

On the 20th day of December, 1915, Bankers' Trust Company and Southern Trust Company and their trustees, Bailey & Holland, conveyed all the said property of the said Mission Canal Company, including said irrigation system, to John H. Shary, and also embraced therein any and all claims against various landowners, including appellants, certain claims of the receivers for unpaid arrears that had been assessed by the receiver. Appellants say in their brief:

"According to the allegations of appellees' pleadings in the trial court, the purchase of the property of the Mission Canal Company, including the irrigation system of said Mission Canal Company, was made by one Bailey and one Holland as the trustees of the Bankers' Trust Company and the Southern Trust Company, both parties to a suit to which appellants were also parties, and said purchase was so made for the said Bankers' Trust Company and the Southern Trust Company under an order or decree made by the district court of Harris county, Tex., in said suit. The Bankers' Trust Company and the Southern Trust Company were plaintiffs and judgment creditors in the suit. The undisputed evidence showed that these allegations were true. It will be seen from the examination of said pages of the statement of facts that the said property of the Mission Canal Company, including its irrigation plant, was ordered sold by said decree of the district court of Harris county free from the 'easements' of appellants to satisfy a judgment rendered in the suit in favor of the Southern Trust Company and the Bankers' Trust Company."

The conveyances to appellants by John J. Conway contained the following clause:

"This deed of conveyance is hereby executed to and accepted by (the grantee, naming him) subject to an express reservation to John J. Conway, his heirs or assigns, of the right to construct and maintain such irrigating canals, laterals, drainage, ditches and pumping plants on the land herein conveyed, as said John J. Conway, his successors or assigns, may deem necessary for the operation of an irrigating canal, whether the same be for the benefit of the land herein conveyed or for such other lands or tracts as for any reason it may be determined to irrigate or drain, and also expressly reserving the right for a public road or roads as are shown by the map or plat of said subdivision of the porciones hereinabove referred to. Also reserving over this tract for the use of all other acreage owners in said porciones between whom and the river this tract may be situated the riparian right to the use of the river water for domestic and irrigating purposes."

Conway made an appropriation of waters from the Rio Grande in sufficient quantity to irrigate said lands. A blueprint was attached to said water appropriation showing the projected canal. This was on record prior to the receivership, and this water appropriation was a part of the property of the Mission Canal Company sold by the said receiver and now claimed by the United Irrigation Company. The proof introduced showed that appellants and defendants hold under Conway and Hoit, who inagurated the irrigation project and sold to other farmers similarly situated as appellants, as well as to those irrigation corporations mentioned under whom the present company acquired its rights and easements. The property had been by Conway and Hoit, and the irrigation company to whom they sold, divided into small tracts from 10 to 40 acres. The maps showed the lands to be watered. It showed the canals, laterals, and flumes.

It was proven the tracts of land were sold to the purchasers as irrigated land having water rights, by Conway and Hoit; and, as they were sold, laterals were constructed from the main canal and onto their respective tracts, and that water was furnished from the irrigation system for the respective tracts that were prepared for irrigation and in cultivation, at the rate of $1 per acre, up to the time of the appointment of the receiver of the property of the Mission Canal Company by the district court of Harris county, but after the appointment of a receiver he demanded a flat rate of $4 per acre for each year.

We do not find any written agreement fixing the rates as aforesaid at $1 per acre, but, on the contrary, there was none.

S. A. McHenry testified:

"I started taking water in the winter of 1907, and that charge was $1 an acre and was continued, I think, up until 1912 before any change was made. Yes, sir, I got water at that rate, clear on up to the time of the receivership."

Further on he said:

"I never had any written contract of any kind with Conway and Hoit with reference to the right to take water. No, sir; never did. Yes, sir; I got a written contract covering lands I was to buy, and the contract was followed by a deed. * * * I never had any agreement in writing with reference to water. * * * He said they were going to put in an irrigation system and irrigate the land, John J. Conway and James W. Hoit, and that the water right went with the land. He said the water right would be permanent, and could not be segregated from the land. No; he did not say that we would get water for $1 an acre as long as we lived."

Appellants were in pedal possession of the land on the day of the sale, claiming it, and both parties hold under common source of title.

On the 17th of March, 1910, the Mission Land Improvement Company conveyed to Mission Canal Company all the property it had acquired, and described the canals, pumps, etc.:

"And all water rights and appropriations of water, etc. Also all water contracts by and between Mission Land Improvement Company for the Mission Canal Company and the various owners of the various tracts of land shown on the map or plat of the Lomita lands, consisting of about 27,000 acres, which said contracts are permanent in their nature and are obligations on the part of said various landowners to take water from said irrigation system and to pay a remuneration therefor for each and every acre of water for each and every year, together with all the property rights, contract rights, revenues, equities and interest in those said water contracts set out in the same and in which said Mission Land Improvement Company may have heretofore held or seemed to hold some interest, which interest, if any, is hereby conveyed and said contracts are hereby referred to in aid of fuller and better description of their contents. Also interest in all water contracts made by and between John J. Conway for the Mission Canal Company and the various owners of the various tracts of land shown on the map or plat of said Lomita Lands, which said contracts are hereby referred to in aid of fuller and better description of their contents."

Shary has been managing the affairs of the United Irrigation Company since formed, and says:

"I claim that these plaintiffs have no water rights, and I understood that was settled by the decree of the court in Houston. Yes; I claim that they have no water rights. No; I have not refused to let them have a water right. I have never met Mr. Netting or Dobbins, and I don't think I have ever met Mr. Birket. I never saw Mr. McHenry to recognize him until that time in Alice. * * * There is some of the land owned by these plaintiffs on which the flat rate was paid, like anybody else pays, and the company furnished water on that land; the 10-acre tract testified to by Mr. McHenry yesterday being one of the tracts in controversy."

The order of sale and the order confirming the sale in the cause 56169, Harris District Court, Bankers Trust Company v. Mission Canal Company, S. A. McHenry, et al., Interveners, among other things, recited the property to be sold, as follows:

"Free from all liens, claims, demands, rights, easements, covenants, benefits, titles, equities and privileges of each and all parties to this cause, now owned, held, claimed or asserted by the parties in this cause, and each of them, on or against the properties as above described and herein foreclosed upon."

In answer to a special issue the jury found that Jno. H. Shary did not, prior to or at the time of his purchase of the Mission Canal property, have actual knowledge or notice of plaintiff's claim of water rights to the land in controversy.

The court submitted other issues besides innocent purchaser to the jury: First issue what would be a reasonable water charge per acre per watering for the year 1918? The jury found $2.50 for each watering. Second issue, for year 1917, and the jury answered $10 per acre per year, based on four waterings. And third issue, reasonable rental value per acre for year 1917, and the jury answered $16 per acre, less the cost of watering.

The court in its judgment adjudged that plaintiff take nothing by its suit against defendant, and defendant take nothing against plaintiff, except to recover costs, then declared:

"This decree is without prejudice to the rights of the respective plaintiffs remaining as aforesaid, conferred upon them by the statutes of this state, as contiguous landowners, to be furnished with water from the canals of the defendant when shown entitled thereto under the statutes."

Appellants in their argument state the issues of this case as follows:

(1) "Did appellants acquire water rights appurtenant to their respective lands?" (2) "If appellants did acquire such easements, then have they lost them by reason of appellee's having alleged and proved that it purchased the irrigation system, the servient tenement, and paid a valuable consideration therefor without notice, actual or constructive, of the existence of appellants' said easements?" (3) "Were appellants entitled to recover damages of appellee for the loss of the rental values of their lands during the year 1917?" (4) "Were appellants entitled to the issuance of a peremptory writ of mandamus and a writ of injunction compelling appellee to allow them to enjoy their said easements at the reasonable rate for the water supply as found by the jury?"

They further state that of course questions 3 and 4 depend upon the answers to questions 1 and 2.

On the other hand, appellees submit that there is an additional issue, viz.: Did the evidence disclose that the water rights of appellants, if ever they had any, were divested out of them by the order of sale and the order of confirmation made in the receivership case?

[1] We conclude that appellants had acquired, prior to the institution of the receivership case, the right to receive water at reasonable rates from the irrigation plant, which right was an easement appurtenant to their lands, created by the verbal agreements and representations afterwards complied with.

[2] We also conclude that the evidence does not support the finding that Shary was an innocent purchaser of the irrigation plant. The existence of the laterals connecting appellants' lands with the system was sufficient to put him on notice of whatever rights they had. However, both of these issues become immaterial if appellee's contention is correct that such rights were divested out of appellants by the decrees ordering and confirming the sale.

The decree in the receivership proceeding ordering the sale of the irrigation system, and the decree confirming the sale, contained the provision that—

The conveyance "shall have the force and effect of divesting out of the canal company and the receiver thereof, and out of each and all the parties to this cause, all rights, titles, interests, obligations, covenants, and easements of every kind and character whatsoever in and to said property, and every part and parcel thereof, save and except that said W. S. Bailey and Travis Holland, trustees for Bankers' Trust Company and Southern Trust Company, the grantees under said conveyance, shall take, hold, and enjoy their said properties subject in all respects to, and chargeable with, the duties and obligations of the contracts heretofore made and entered into by and between the Mission Canal Company and its receiver on the one side, with the Bankers' Trust Company, Granjeno Development Company, and Southern Land & Water Company, respectively, on the other side."

[3] The decrees were admitted in evidence, and were properly admitted. The sustaining of the exception to the plea of res adjudicata did not eliminate from the answer those allegations which constituted a statement of defendant's title, or rather a special answer showing divestiture of plaintiffs' title, to water rights, if any they had, but merely to so much as undertook to plead a prior adjudication of the very controversy now sought to be litigated.

[4] However, these orders were admissible under the general denial, for there can be no doubt of the right of a defendant to show, under a general denial, that a certain easement pleaded by plaintiff as owned by him was divested out of plaintiff by a judicial sale. The decrees in question were not appealed from. It appears that on June 28, 1916, more than six months after the entry of the decree confirming the sale, appellants filed their second amended plea of intervention, making appellee a party to the receivership cause, and sought, in substance, to have the court modify its decrees ordering and confirming the sale "so as to fully recognize the rights of" appellants, and praying that they be adjudged to have water rights as claimed by them. This effort to secure a modification of the decrees was dismissed by the court, and upon appeal the judgment affirmed, but, as we understand, a writ of error has been applied for.

[5] The fact remains that the decrees ordering and confirming the sale have not been appealed from, nor set aside or modified, and cannot be ignored in this collateral proceeding, but must be given their legal effect. No contention is made that they are void, nor do we perceive any ground upon which they can be held void. As appellants did not await the termination of their effort to procure the modification of such decrees, but placed their ownership of water rights in issue in another court, the decrees are binding upon them as rendered. They contend that their permanent water rights constituted an easement to receive water at reasonable rates from the irrigation system. As they were parties to the receivership suit, the decrees above mentioned undoubtedly had the effect of passing such system free from their easements, rights, interests, and titles. It is true that the court sustained an exception to the plea of res adjudicata urged by defendants, which simply means that the court held the pleadings insufficient to show that the same cause of action sought to be litigated had been adjudicated in the intervention filed by appellants in the receivership case, in which the judgment had been entered against them from which they prosecuted their appeal. It is immaterial upon what ground the court sustained the exception. That judgment must not be confused with the decrees ordering and confirming the sale, which were not appealed from and have not been vacated or modified. The opinion of the Court of Civil Appeals is important in this case, not as an affirmance of prior adjudication of the cause of action asserted by appellants herein, but only as showing the opinion of the court that rendered it upon the legal question whether the orders of sale and confirmation had the effect of divesting appellants of such contract water rights as they theretofore had acquired, if they had acquired any. If that court was correct in its holding as to the effect of such orders, this court should make the same holding. If the

intervention from which that appeal was prosecuted had never been filed, the fact would remain that appellants had permitted themselves to be divested of the very rights they assert in this case, and had not appealed from the decrees which accomplished that result.

It follows that appellants are not entitled to any injunction or damages based on the theory that they own certain contract water rights. They admit in their argument that they are not entitled to the relief mentioned in issues 3 and 4 quoted from their argument, unless questions 1 and 2 are answered favorably to them. The foregoing conclusions, therefore, dispose of the case as to all contentions made by appellants.

They do not rely upon, or allege, the violation of any statutory right to receive unappropriated water, nor is there any proof that there was a surplus of water over and above that contracted to other persons. The court denied any injunction or damages, but excluded any adjudication concerning statutory rights, and no complaint is made that he should have passed thereon.

Appellants call attention to the fact that the trial court overruled the exception of appellees to the petition wherein it was contended that it was necessary to allege an application to the board of water engineers as a prerequisite to the right to sue. They contend therefore that there is no issue in the case with respect to that matter. We wish, however, to say that after further consideration of our statutes we conclude that the court was correct in making such ruling, and in holding that the court had jurisdiction to hear and determine the issues regardless of whether or not such an application had been made under the statute.

We conclude that the judgment heretofore entered, affirming the judgment of the trial court, is correct, and that therefore the motion for rehearing filed by appellants should be overruled. The former opinion filed herein is withdrawn, and this opinion in lieu thereof as the opinion of the court in this case.